**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **IRENA JANGI,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1899-SLP** |
| | ) | |
| **F. FIGUEROA, Warden, Diamondback Facility, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Irena Jangi, a noncitizen[1] and Italian citizen and proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 her detention by U.S. Immigration and Customs Enforcement ("ICE"). Chief United States District Judge Scott L. Palk referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The undersigned set an expedited briefing schedule, and the Petition is at issue.[2] On August 31, 2026, Petitioner filed a Motion for Bond Exemption, Doc. 7. On October 19, 2026, Petitioner filed a Motion for Leave to File Verified Supplemental Pleadings, Doc. 18.

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] On October 19 and 20, Petitioner filed numerous documents, which the undersigned construes together as a reply in support of her Petition. Docs. 17, 18, 19, 20. Petitioner also filed two supplements to her Petition, which the undersigned has considered to the extent they are relevant. Docs. 5, 12.

For the reasons below, the undersigned recommends that the Court grant the Petition, Doc. 1, in part and order Respondents to provide Petitioner a bond hearing under 8 U.S.C. § 1226(a) within seven days or otherwise to release her if there is no hearing within that time. The undersigned also recommends that the Court deny Petitioner's Motion for Bond Exemption, and adoption of this Report and Recommendation moots her other pending motion.

## I. <u>Background</u>

Petitioner, a native of Pakistan and citizen of Italy, entered the United States on November 21, 2017, in Los Angeles, California on a tourist visa. Doc. 1-1 at 4; Resp. at 1; Doc. 16-1 at 1, 4 (Record of Deportable/Inadmissible Alien); Doc. 16-2 at 2 (Notice of Intent to Issue a Final Administrative Removal Order). She was inspected by an immigration officer, admitted to the United States through the Visa Waiver Program ("VWP"), and authorized to remain in the country until February 18, 2018. Resp. at 1; Doc. 16-2 at 2.

In January 2018, Petitioner alleges she married her U.S. citizen ex-husband and applied for legal status, which was denied based on missing documentation. Doc. 1-1 at 4. She alleges physical and psychological abuse during the marriage. *Id.* at 5; Doc. 7-1 at 1. Petitioner alleges in November 2020 her then-husband was arrested for Aggravated Assault with a Deadly Weapon for pointing a gun at her. Doc. 1-1 at 4. She alleges she has lived in a women's shelter in Waxahachie, Texas since then. *Id.*[3] After leaving her marriage,

[3] Petitioner also alleges a second marriage from 2023 to 2025. Doc. 1-1 at 6.

she alleges she filed a self-petition for adjustment of status under the Violence Against Women Act ("VAWA"), which remains pending. *Id.* at 4-5; Doc. 7-1 at 1-2. Petitioner received a prima facie determination in June 2022, valid through April 3, 2027. Doc. 17 at 4; Doc. 18 at 1-2; Doc. 18-1 at 8 (Prima Facie Determination).

On May 1, 2026, ICE took custody of Petitioner from law enforcement officials in Waxahachie, Texas after she was arrested for assault. Resp. at 1-2; Doc. 16-1 at 2-3. On the same day, ICE issued Petitioner a Notice of Intent to Issue a Final Administrative Removal Order and a Final Administrative Removal Order ("FARO") ordering Petitioner removed to Italy. Resp. at 2; Doc. 16-2 at 1-4. When Petitioner was served with the Notice of Intent to Issue a FARO, she indicated she wished to request asylum. Resp. at 2; Doc. 16-2 at 3. ICE then referred Petitioner's case to the Immigration Court for her asylum-only proceedings. Resp. at 2; Doc. 16-3 at 1-2 (Notice of Referral to Immigration Judge).

On June 16, 2026, Petitioner sent ICE a Request for Prosecutorial Discretion and an Urgent Request for Immediate Release based on her purported membership in the class action in *Immigration Center for Women & Children v. Noem*, 351 F.R.D. 324 (C.D. Cal. May 20, 2026) (hereinafter *ICWC* or the ICWC PI Order). Doc. 1-1 at 1-2 (Requests to ICE). The requests notified ICE of Petitioner's pending VAWA self-petition, her membership in the class action in the *ICWC* class, and her current detention. *Id*. Neither party has told the Court whether ICE or the ICE Field Office Director responded to Petitioner's requests.

On September 30, 2026, the Immigration Court denied Petitioner's request for asylum and ordered her removed. Resp. at 2; Doc. 16-4 at 1 (Order denying asylum).

Petitioner has until October 30, 2026, to file an appeal. Resp. at 2; Doc. 16-4 at 2. On October 20, 2026, Petitioner filed a supplemental notice informing the Court she appealed the denial of her request for asylum and removal order on October 5, 2026. *See* Doc. 20; Doc. 20-1. Accordingly, her removal order is not yet final under 8 C.F.R. § 1241.1.

When Petitioner filed her Petition, she was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1; *see also* Resp. at 2 (alleging Petitioner remains detained at Diamondback). Neither party has alleged Petitioner has been moved; nor has Petitioner filed a Notice of Change of Address.

## II. Petitioner's Claims

Petitioner asserts four overlapping counts alleging violation of her due process rights. Specifically, she alleges:

- **Count I: Violation of Due Process.** Petitioner alleges her continued detention violates her right to due process. Pet. at 6.

- **Count II: Violation of Due Process**. Petitioner alleges the government's failure to conduct a current assessment of whether she is a threat to public safety to justify her continued detention violates her due process rights. *Id.*

- **Count III**: **No Active Immigration Proceedings.** Petitioner alleges Respondents have not placed her into active immigration proceedings through the issuance of a Notice to Appear. *Id*.

- **Count IV: Violation of Due Process.** Petitioner alleges her continued detention without a bond hearing or a meaningful opportunity to seek release violates her right to due process. *Id*. at 7.

Petitioner seeks immediate release or "an emergency bond hearing before an Immigration Judge." *Id.* She also requests the Court "order Respondents to release [her] from detention due to her being a VAWA self petitioner with a pending VAWA petition

and according to the May 20th 2026 [*ICWC*] injunction [she] cannot be deported nor can [she] be detained, as Prima Facie has been approved." *Id.*

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Legal Framework for VAWA Petitions and ICE Guidance

The Violence Against Women Act of 1994, or VAWA, amended the Immigration and Nationality Act ("INA") and "created the VAWA self-petition, which provided that noncitizens with abusive qualifying family members can 'self-petition' for family-based immigrant visas without their abuser's knowledge, consent, or participation." *ICWC*, 351 F.R.D. at 351 (citing 8 U.S.C. §§ 1101(a)(51), 1154(a)(1)(A)(iii), (B)(iii)).

After receiving a self-petition, United States Citizenship and Immigration Service ("USCIS") determines whether the evidence submitted establishes a prima facie case for VAWA relief. *See* USCIS Policy Manual, vol. 3, pt. D, ch. 5.A.1., https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5. If USCIS concludes the self-petitioner has addressed VAWA's eligibility requirements, it issues a Notice of Prima Facie Case. *See id.* The Notice "does not confer immigration status or a benefit," and it "is not a determination that the self-petitioner established eligibility or that the self-petitioner has met his or her burden of proof." *Id.* However, self-petitioners who establish

a prima facie case are eligible for certain public benefits "such as welfare, health, disability, or unemployment and similar benefits while their petitions are pending." *ICWC*, 351 F.R.D. at 351 (citing 8 U.S.C. §§ 1611(a), 1641(c)).

Under its 2011 policy, ICE would generally refrain from initiating removal proceedings against known victims of a crime, and exercising favorable discretion—such as release and deferral or a stay of removal—would generally be appropriate. *Id.* at 353. ICE's 2021 Directive echoed these policy choices and added that ICE would typically request expedited adjudications of victim-based benefit petitions from USCIS and would consider a person's eligibility for victim-based benefits a positive discretionary factor. *Id.*

In 2025, however, ICE rescinded its 2021 Directive and eliminated the presumption of protection from immigration enforcement for these petitioners and replaced it with a presumption of enforcement, subject to narrow limitations (the "2025 Guidance"). *Id.* at 354. The 2025 Guidance also allegedly refused to honor USCIS grants of deferred action to noncitizens with pending petitions and instead effectively revoked those grants by pursuing immigration enforcement actions against them. *Id.* Specifically,

> [T]he 2025 Guidance establishes that the following policies govern ICE officers' enforcement actions towards individuals with pending victim-based benefit petitions: officers should (1) "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised"; (2) "consult with" local ICE attorneys only "to ensure any such [civil enforcement] action is consistent with applicable legal limitations"; (3) need not consider a noncitizen being "a victim of a crime" as "a positive discretionary factor"; and (4) will not "routinely request expedited adjudications from USCIS," but may do so on a case-by-case basis when "it is in ICE's best interests."

*Id.* (internal citations omitted).

In *ICWC*, the Central District of California court preliminarily enjoined the 2025 Guidance. The 2025 Guidance was significant because it:

> expressly repealed previous policy and dramatically changed ICE's enforcement posture towards individuals with pending petitions for victim-based immigration benefits from a policy of refraining from immigration enforcement against such persons in deference to their pending applications, to a policy of enforcement despite their pending applications. The victim-based immigration benefits in issue are VAWA self-petitions, U visas, and T visas.

*Id.* at 348. The 2025 Guidance "rescinded and superseded" ICE Directive 11005.3, "Using A Victim-Centered Approach with Noncitizen Crime Victims" (Dec. 2, 2021) ("2021 Directive") and ICE Policy Statement "Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs" (Jun. 17, 2011) ("2011 Policy"). *Id*. at 350, 353-355. The Central District of California court ultimately enjoined the enforcement of the 2025 Guidance, which implicitly reinstated the 2021 Directive and 2011 Policy. *Id*. at 397 ("Pursuant to 5 U.S.C. § 705, the Court hereby STAYS the 2025 Guidance, including its rescission of prior policies.").

The *ICWC* court applied the stay "in favor of All Individual Plaintiffs, the current and future clients of the Organizational Plaintiffs, and the members of all three Classes." *Id*. These classes include:

> (1) "Pending Petition Class: All individuals with pending principal or derivative U visa petitions, T visa petitions, or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement."
>
> (2) "Deferred Action Class: All individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to

> detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status."

> (3) "Stay of Removal Class: All individuals with a pending U or T visa petition who, since January 30, 2025, have been, are, or will be detained by ICE and who request or requested a stay of final removal order prior to enforcement of that removal order."

*Id*. at 396. Accordingly, the reinstated 2021 Directive and 2011 Policy only apply to members among these classes. *Id*. at 396-397. However, these policies did not immediately guarantee a class member's release from detention; a qualifying class member may still be detained for "serious adverse factors," such as national security concerns or a serious criminal history. *Id*. at 353.

## V. <u>Analysis</u>

### A. Section 1226(a) applies to Petitioner's detention.

As an initial matter, Respondents assert Petitioner is detained under § 1226(a). Resp. at 5-8. Petitioner does not dispute that assertion. Section 1226(a) generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing before an immigration judge. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

The Tenth Circuit recently confirmed § 1226(a) applies to govern detention of noncitizens like Petitioner. *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1235-49 (10th Cir. 2026). In *Santillan Quiroz*, the Tenth Circuit concluded "those who entered the United States without admission and who have lived here since are categorically unable to seek

admission while they remain in the country." *Id.* at 1239 (citation modified). Accordingly, "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond)." *Id.* at 1237. Therefore, based on Respondents' acknowledgment that § 1226(a) applies, Tenth Circuit precedent, and this Court's prior holding in *Lopez v. Corecivic Cimmaron Correctional Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *3-7 (W.D. Okla. Jan. 21, 2026), the Court should find § 1226(a) governs Petitioner's detention.[4]

**B. Petitioner's Membership in the ICWC PI Order Pending Petition Class Does Not Entitle Her to Any Relief**

While Petitioner does not bring a claim specifically arising out of her purported membership in the Pending Petition Class, she seeks an order from the Court that Respondents must release her based on the *ICWC* injunction. Pet. at 7. Petitioner's purported membership in an *ICWC* class does not entitle her to any relief.

[4] Because Petitioner requested asylum upon Notice of Intent to Issue a FARO, she is not subject to an administratively final order of removal, which would trigger detention under 8 U.S.C. § 1231(a). Resp. at 7; *see also, e.g.*, *Talv v. Soto*, No. 26-cv-09447, 2026 WL 2607317, at *3 (D.N.J. Sep. 3, 2026) (concluding a VWP entrant with a pending asylum claim is not subject to "an administratively final order of removal for purposes of § 1231(a)(1)(B)(i)"); *Condappa v. Field Off. Dir.*, No. 26-CV-00933, 2026 WL 1642814, at *4 (N.D. Ohio June 8, 2026) (R&R) (recommending a bond hearing under § 1226(a) after collecting cases and noting "circuit courts across the country have concluded that a VWP Removal Order does not constitute a final order of removal until the VWP participant's asylum application, has been denied"); *AMM v. Thompson*, No. SA-25-CV-01210, 2025 WL 3296315, at *2 (W.D. Tex. Nov. 26, 2025) (concluding "if a VWP participant like Petitioner applies for asylum, the VWP FARO will not become final unless and until the asylum claim is denied").

As an initial matter, there are substantial questions about what effect, if any, *ICWC*'s injunction has on this Court. *See Guillermo B. R. v. Blanche*, No. 26-CV-3599, 2026 WL 2665614, at *3 (D. Minn. Sep. 10, 2026) (noting "substantial questions" about what effect ICWC has on the court); *Jose Alberto C. D. v. Blanche*, No. 26-CV-3566, 2026 WL 2588362, at *4 (D. Minn. Sep. 2, 2026) (noting "this Court has serious reservations about whether the ruling in *ICWC* actually applies to anyone beyond the named plaintiffs in that case") *F.J.V.R. v. Moniz*, No. 26-CV-12525, 2026 WL 1751998, at *3 (D. Mass. June 18, 2026) ("It is not clear what effect, if any, that non-final order has in this proceeding, and whether this Court has the authority to enforce it.").

Magistrate Judges in this District have recently concluded the *ICWC* injunction does not entitle a petitioner to relief before this Court. *See, e.g.*, *Onate v. Gantt*, No. CIV-26-1403-SLP, 2026 WL 3006706, at *5 (W.D. Okla. Oct. 6, 2026) (R&R), *adopted*, 2026 WL 3089264, at *1 (W.D. Okla. Oct. 15, 2026); *see also Kumstis v. Figueroa*, No. CIV-26-1724-G, 2026 WL 3169681, at *5 (W.D. Okla. Oct. 22, 2026) (R&R); *Lozano v. Warden, Diamondback Corr. Facility*, No. CIV-26-1806-HE, 2026 WL 3136227, at *2 (W.D. Okla. Oct. 20, 2026) (R&R); *Talbot v. Warden of Diamondback Corr. Facility*, No. CIV-26-1741-D, 2026 WL 2943108, at *3-4 (W.D. Okla. Sep. 30, 2026) (R&R).

Similarly, most district courts have expressly found *ICWC* does not apply outside the Central District of California, often concluding the injunction is still in its preliminary stages and an appeal is pending, meaning that the injunction is not yet final and does not hold nationwide or preclusive affect. *See, e.g.*, *Guillermo B. R.*, 2026 WL 2665614, at *3; *Rodrigues v. Lynch*, No. 1:26-CV-2319, 2026 WL 2520313, at *2 n.3 (W.D. Mich. Aug.

26, 2026) ("Under these circumstances, at this time, this non-binding case does not present a basis for relief in this habeas action."); *Portillo Garcia v. Mullin*, No. CV H-26-2481, 2026 WL 2323547, at *1 n.11 (S.D. Tex. Aug. 11, 2026) ("However, that matter remams [sic] pending in another district court and is presently in a prelimmary [sic] posture. The [c]ourt is not persuaded that the existence of a non-final order entered in separate litigation independently establishes Petitioner's entitlement to habeas relief."); *Prado Orozco v. Raycraft*, No. 2:26-CV-11985, 2026 WL 2138181, at *7 (E.D. Mich. July 24, 2026) ("*ICWC*'s persuasiveness is highly limited by the fact that it is in a non-final, preliminary injunction posture currently on appeal from a different district that is not even within this Circuit."); *Ore-Falcon v. Wofford*, No. 26-CV-00181, 2026 WL 1871024, at *3 n.1 (E.D. Cal. June 29, 2026) ("The decision of another judge in a different district is not binding upon this court any more than that court is bound by the decisions of this court."); *Rauda Choto v. Ladwig*, No. CV 26-0322, 2026 WL 1652576, at *1 (W.D. La. June 8, 2026) ("However, that matter remains pending in another district court and is presently in a preliminary posture. The Court is not persuaded that the existence of a non-final order entered in separate litigation independently establishes Petitioner's entitlement to emergency injunctive relief in this proceeding."); *Almanza v. Oddo*, No. 26-CV-720, 2026 WL 1506283, at *6 n.5 (W.D. Pa. May 29, 2026) (noting that the preliminary injunction issued in the California class action is not binding); *J.R.S.B. v. Olson*, No. 26-CV-478, 2026 WL 1481267, at *4 n.5 (N.D. Ind. May 27, 2026) (observing that a petitioner remains free to seek relief as a purported class member in the California action, but another court's non-final order is not subject to preclusive effect in a separate proceeding).

Other district courts have come to a different conclusion. *See*, *e.g.*, *Escobar Ramirez v. Mullin*, No. 26-3278, 2026 WL 2619875, at *2 (D. Kan. Sep. 4, 2026) (finding the government "violated the 2021 Directive, which now governs enforcement activities with respect to certain noncitizens"); *Villeda Mejia v. Baltazar*, No. 26-CV-02084, 2026 WL 2224656, at *2 (D. Colo. Aug. 3, 2026) (concluding a T-visa applicant "Petitioner falls within [the ICWC PI Order] class, is protected from removal, and must be released"); *Munoz Leal v. Bondi*, No. 25-CV-06072, 2026 WL 1847745, at *1 (S.D. Tex. June 26, 2026) (noting respondents "do not contest that Petitioner is a member of the nationwide class action"); *Gonzalez v. Wesling*, No. 26-CV-231, 2026 WL 1765871, at *9 (D.R.I. June 19, 2026) (finding petitioner "clearly belongs" to both the Pending Petition Class and the Stay of Removal Class); *Perdomo Reynaud v. Lyons*, No. 26-CV-05905, 2026 WL 1674229, at *5 n.4 (D.N.J. June 10, 2026) (recognizing petitioner's membership in the ICWC PI Order class).

But even if *ICWC* had effect here, the ICWC PI Order would not entitle Petitioner to release. "A pending VAWA application does not, standing alone, confer lawful immigration status or create a statutory entitlement to release from custody. Petitioner has not identified a statute or binding regulation that prohibited Respondents from detaining [her] while [her] application remained pending." *Prado Orozco*, 2026 WL 2138181, at *7 (citation modified); *see also Flores v. Blanche*, No. 26-5446, 2026 WL 2069995, at *2 (D.N.J. July 17, 2026) (holding in the context of pending U-visa applications, a pending application "does not, standing alone, confer lawful immigration status, prevent enforcement of a final order of removal, or create a statutory entitlement to release from

custody”). ICE’s internal policy “does not, without more, create a judicially enforceable right to release or restrict an agency’s statutory authority to detain an individual subject to a final order of removal.” *Flores*, 2026 WL 2069995, at *2 (denying petitioner’s APA and *Accardi* doctrine claims based on purported membership in the ICWC PI Order class).

Further, even under ICE’s prior policies, Petitioner would have only been subject to ICE’s discretionary “deferred action” not to initiate removal proceedings.[5] *See Eliseo C. v. Blanche*, No. 26-CV-2282, 2026 WL 2683449, at *7 (D. Minn. June 29, 2026) (noting “the 2011 and 2021 ICE policies themselves state that they provide guidance regarding ICE’s position with respect to its exercise of ‘prosecutorial discretion’”). Deferred action is ordinarily understood to be an act of “prosecutorial discretion,” and “DHS has sole authority to exercise prosecutorial discretion in immigration cases.” *Rauda-Castillo v. Lynch*, 616 F. App’x 385, 388 (10th Cir. 2015); *see Jose Alberto C. D.*, 2026 WL 2588362, at *7 (“In sum, because his deferred action is ultimately a matter of prosecutorial discretion, [petitioner] has failed to show that he is entitled to a writ of habeas corpus, and the Court denies his habeas petition on this basis.”). Accordingly, Petitioner has not shown that her custody is unlawful under the statute in a manner that would entitle her to habeas relief.

[5] Though, the undersigned concludes Petitioner has not sufficiently alleged she was in active deferred action status where she has alleged a pending VAWA petition with a *prima facie determination* but has not alleged ICE granted any *deferred action* based on the pending petition. According to the USCIS Policy Manual, deferred action can be granted for VAWA petitioners after the VAWA petition has been approved. *See* USCIS Policy Manual, vol. 3, pt. D, ch. 5.D.2, https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5#footnotelink-43.

### C. Section 1226(a) and Due Process

Nor does *ICWC* help Petitioner's claim that her detention—while a VAWA petition is pending—violates her constitutional right to due process. The *ICWC* case, where relevant to Petitioner's claims here, had nothing to do with due process. *Prado Orozco*, 2026 WL 2138181, at *8, *9 n.6 (holding *ICWC* "had nothing to do with due process" and his VAWA prima facie determination did not "provide any conceivable basis for a due process violation"). Thus, to the extent Petitioner relies on *ICWC* for her VAWA-related due process claim, her reliance is misplaced.

Because Petitioner is not entitled to relief based on her membership in the ICWC PI Class, she is limited to relief based on application of § 1226(a) and its associated due process. Respondents acknowledge that "noncitizens detained under § 1226(a) are generally eligible for bond." Resp. at 7 (quoting *Santillan Quiroz,* 180 F.4th at 1251 n.13). Further, because § 1226(a) applies to Petitioner's detention, she is owed the due process provided to her under the statute. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an [Immigration Judge]." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025). *See also Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026) ("An individualized custody redetermination hearing [under § 1226(a)] would provide Petitioner with the process she is due under the statute."). Based on Tenth Circuit precedent and this Court's reasoning in *Lopez*, 2026 WL 165490, at *3-7, the Court could apply § 1226(a) to her current detention and grant Petitioner a bond hearing without separate analysis of her due process claims.

Given the focus of Petitioner's claim on due process rather than application of § 1226(a), *see* Pet. at 6-7, the undersigned also analyzes her due process challenge. At the outset, Petitioner alleges her prolonged detention without a bond hearing or other determination that she is currently a threat to the public or a flight risk violates her substantive due process rights. In the civil immigration detention context, courts consistently apply the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed a noncitizen. *See, e.g.*, *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same). Accordingly, considering Petitioner's request for an individualized custody review, the undersigned liberally construes her claim to allege a violation of her procedural due process and analyzes such claim using the *Mathews* factors.

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. All three factors weigh in Petitioner's favor.

First, Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It does not eliminate Petitioner's significant interest in being free from detention. *See, e.g.*, *Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (concluding the first *Mathews* factors supports finding a due process violation where petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)).

Second, the risk of erroneous deprivation is high here, considering Petitioner's entitlement to a bond hearing under § 1226(a). *See, e.g.*, *Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second *Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a) and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)).

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh her liberty interest or risk of erroneous deprivation. *See Montero Cordova*, 2026 WL 867689, at *10 (finding though "the Government's interest in enforcing its immigration policies must be afforded considerable weight," the third factor favors petitioner because "the fiscal and administrative burdens of providing a bond hearing under § 1226(a) are minimal and do not provide adequate justification for foregoing the hearing entirely"); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) (comparing the "quite limited" harm to government, "because the administrative burden of a bond hearing is minimal," to the "sizeable harm posed to [petitioner] by continued—and potentially unnecessary—detention" (citation modified)).

Bond hearings "are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties." *Singh v. Bondi*, No. 26-CV-0125, 2026 WL 690013, at *6 (W.D. Tex. Mar. 6, 2026). Petitioner's continued detention without a bond hearing violates her due process liberty interests, and she is entitled to a prompt bond hearing under § 1226(a).

**D. The proper remedy is a bond hearing.**

Petitioner requests immediate release or a "an emergency bond hearing before an Immigration Judge." Pet. at 7. The undersigned concludes a bond hearing is the proper

remedy. *See Karimov,* 2026 WL 950130, at *1 (finding a bond hearing under § 1226(a) "would provide Petitioner with the process he is due under the statute"); *Kumar v. Mullin*, No. CIV-26-689-SLP, 2026 WL 1960943, at *2 (W.D. Okla. July 7, 2026) (concluding because § 1226(a) governs petitioner's detention, "he is entitled to an individualized bond hearing"). Further, Judges in this District, including this Court, have consistently declined to order burden shifting at any bond hearing. *See, e.g.*, *Guzman Morales v. Mullin*, No. CIV-26-587-SLP, 2026 WL 1962374, at *2 (W.D. Okla. July 7, 2026) (declining to address petitioner's burden-shifting claim).

**E. The Court should decline to address any remaining claims and requests.**

Petitioner also appears to request a stay of removal, assistance with her pending VAWA petition, and additional injunctive relief. *See, e.g.*, Doc. 12 at 1, 6 (attaching an ICE form requesting stay of removal and asking the Court to assist her with her pending case at USCIS); Doc. 18 at 4 (requesting "Respondents' sworn clarification of her current detention authority, procedures already provided, policy applied, and any identified exceptions"). If the Court grants habeas relief to Petitioner with a bond hearing under § 1226(a), the Court should decline to address the merits of her remaining claims and requests, as these claims and requests are not developed and would likely not provide her any additional relief. *See, e.g.*, *Singh v. Mullin*, No. CIV-26-601-SLP, 2026 WL 1661971, at *3 (W.D. Okla. June 9, 2026) (declining to decide the merits of a petitioner's additional due process claim when adopting the recommended relief of a bond hearing under § 1226(a)).

## VI. <u>Petitioner's Pending Motions</u>

On August 31, 2026, Petitioner filed a Motion for Bond Exemption alleging she is "not able to pay a bond at this time." Doc. 7. The undersigned recommends the Court **DENY** Petitioner's motion as premature because no Immigration Judge has ordered a bond. *Accord Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *1-2 (W.D. Okla. Apr. 16, 2026) (declining to reach due process issues and concluding burden shifting to the government in a § 1226(a) bond hearing is premature and not ripe for adjudication before a bond hearing has been conducted).

On October 19, 2026, Petitioner filed a Motion for Leave to File Verified Supplemental Pleading and, if Necessary, to Accept Reply Out of Time. Doc. 18. Adoption of this Report and Recommendation would **MOOT** Petitioner's motion.

## VII. <u>Recommendation and Notice of Right to Object</u>

For these reasons, the undersigned recommends that the Court **GRANT in part** the Petition, Doc. 1, for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven days or otherwise release Petitioner if she has not received a lawful bond hearing within that period. Further, the Court should **DENY** Petitioner's pending Motion for Bond Exemption, Doc. 7. Adoption of this Report and Recommendation would **MOOT** Petitioner's remaining pending motion, Doc. 18.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **November 4, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **November 9, 2026**. *See* Fed. R. Civ.

P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 28th day of October, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE